IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,      )
        Respondent/Plaintiff,      )
vs.      )      No. 3:99-CR-0236-D (02)
              )      No. 3:03-CV-0896-D
BONIFACE SULEMAN ODIODIO,      )
        Movant/Defendant.      )

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

### A. Nature of the Case

This is a Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to the provisions of 28 U.S.C. § 2255.[1] Movant, a former inmate in the federal prison system,[2] filed the instant action to challenge his federal conviction in Cause No. 3:99-CR-0236-D. The respondent is the United States of America (government).

### B. Factual and Procedural History

On July 7, 1999, the government, in a superseding indictment, charged movant with wire fraud in violation of 18 U.S.C. § 1343 (Count 6); bank fraud in violation of § 1344 (Count 7); and

---

[1] Although movant asserts other jurisdictional bases for this action, as more fully discussed later in these findings, § 2255 provides the only sufficient jurisdictional basis for the instant action.

[2] Movant has been released from physical confinement, but he remains subject to supervised release and has notified the Court of his non-prison address. He is thus "in custody" for purposes of this motion.

money laundering in violation of § 1957 (Count 8).[3]  (*See* Superseding Indictment[4] at 9-11, doc. 13.)[5]  Each of these counts also alleges aiding and abetting in violation of 18 U.S.C. § 2.  (*Id.*)  On July 26, 1999, the Court appointed a Federal Public Defender to represent movant because he was financially unable to retain counsel.  (*See* Order Appointing Fed. Pub. Defender, doc. 21.)  The Court also directed that movant pay $100 monthly to defer the cost of court-appointed counsel.  (*See* Authorization for Distribution of Available Private Funds, doc. 24.)  On October 4, 1999, movant proceeded to trial, and a jury ultimately found him guilty on all three counts.  (*See* Tr. I[6] at 1; Tr. IV at 3-4.)  On October 18, 1999, the Court tentatively found that movant committed perjury during his trial testimony and that his offense level should be increased by two levels pursuant to U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 for obstruction of justice.  (*See* Mem. Op. & Order at 1-4, doc. 71.)  On December 23, 1999, the Court sentenced movant and found the enhancement for obstruction of justice warranted.  (*See* Sentencing Tr. at 2-12.)

Through the same attorney who represented him at trial, movant timely appealed his convictions.  He therein challenged the perjury finding of this Court and the sufficiency of the evidence to support his convictions.  *See United States v. Odiodio*, 244 F.3d 398, 400 (5th Cir. 2001) [hereinafter *Odiodio I*].  The court of appeals summarized the facts surrounding "a misappropriation of a check written by KN Energy to Shell Western for just under one million dollars" that was stolen

---

[3]  Movant was not named in Counts 1 through 5.

[4]  The Court cites to the indictment as a superseding indictment because it supersedes a previous indictment against movant's co-defendant.  (*See* Superseding Indictment at 1.)  For ease of reference, the Court will at times simply refer to the document as the indictment.

[5]  All document numbers refer to the document number in the underlying criminal case.

[6]  "Tr. I" refers to the first volume of the trial transcript.  The Court will utilize similar citation for the other volumes of the trial transcript.

from the mail, altered to be payable to a Robert Allen Burr, and used to open an account at Charles Schwab & Co. (Schwab). *Id.* at 400. The money was then wire-transferred from Schwab into a bank account held by Shyamal Mukherjee (Mukherjee), a non-party to the federal criminal action challenged by movant, and a bank account held by movant at Wells Fargo in the name of World Capital Trust Ltd. *Id.* Movant and his co-defendant Victor Uzoh (Uzoh) then moved money out of the country from both bank accounts. *Id.* Once Schwab discovered that the opening check had been stolen, it froze the accounts, and movant and Uzoh were ultimately arrested and charged. *Id.* Based on these facts, the court of appeals found sufficient evidence to support movant's convictions for wire fraud and money laundering, but not bank fraud. *Id.* at 402-05. It thus affirmed the former convictions, reversed the latter conviction, remanded the case to this Court for resentencing, and affirmed the two level sentence enhancement for obstruction of justice on March 9, 2001. *Id.* at 405.

On June 25, 2001, this Court dismissed Count 7 of the superseding indictment and re-sentenced movant on Counts 6 and 8. (*See* Judgment, doc. 127.) It sentenced movant to seventy-one months imprisonment and five years supervised release on Count 6 and seventy-one months imprisonment and three years supervised release on Count 8. (*Id.*) It directed the sentences to run concurrently and ordered movant to pay restitution to Schwab in the amount of $251,370.33. (*Id.*)

On June 26, 2001, movant again appealed his convictions and sentences on Counts 6 and 8. He argued that the Court erred in basing his sentence on the money-laundering charge because the vacated "bank-fraud conviction was an essential element of his money laundering offense." *See United States v. Odiodio*, No. 01-10832, 2002 WL 261486, at *1 (5th Cir. Feb. 1, 2002) [hereinafter *Odiodio II*]. The court of appeals construed the argument as another challenge to the sufficiency of the evidence to support his money-laundering conviction and again rejected such challenge. *Id.*

3

Movant also argued "that the district court engaged in impermissible double-counting by enhancing his base offense level by two levels pursuant to [U.S. SENTENCING GUIDELINES MANUAL] § 2S1.2(b)(1)(B)." *Id.* The court of appeals found that movant misrepresented that section of the sentencing guidelines and further found that that section "specifically calls for the double-counting of which [movant] complains." *Id.* After rejecting movant's arguments on appeal, the court of appeals affirmed his convictions. *Id.*

On April 30, 2003, this Court received the instant motion to vacate filed pursuant to 28 U.S.C. § 2255. In a three-page motion, movant refers to and incorporates by reference Exhibits A through U and Appendices A through W that are attached to his motion. Although movant provides a standard form for motions filed pursuant to § 2255 as part of the voluminous attachments (more than two inches thick), he lists no specific claims therein. (*See* App. A.)[7] He instead states "See attached" without elaboration. (*See id.* at 7-8.) He then provides Appendixes B through W with Exhibits E through U, including a "Motion for Discovery" as Exhibit R. He also attaches a "Motion to Vacate Mandate Pursuant to Rule 60(b)(1) Federal Rules of Civil Procedure."[8]

On September 11, 2003, the government filed a response to the § 2255 motion in which it identifies and addresses thirteen claims raised by movant and opposes the motions for discovery and to vacate mandate. (*See* Resp. at 1-2, 11-13.) In his reply, movant does not object to the government's characterization of his claims except to identify four additional claims which he contends that

---

[7] Appendix A commences with the standard form for § 2255 actions, and is found between Exhibit D and Appendix B. (*See* List of Apps. found after List of Exs. immediately after three-page motion to vacate.)

[8] Because movant has filed a motion to vacate pursuant to 28 U.S.C. § 2255 and a motion to vacate mandate, the Court clarifies that when it generically refers to a motion to vacate, it is referring to the § 2255 motion.

the government did not address.  (*See* Objection to United States' Resp. at 3, [hereinafter Reply].)

He also urges the Court to grant his motions for discovery and to vacate mandate.  (*Id.* at 5-7.)

## C.  Substantive Claims

After reviewing the motion to vacate, its various attachments, the government's response, and the reply filed in this action, the Court finds that movant raises the following claims in this action:[9]

1.   Insufficient evidence supports his convictions and the enhancement for obstruction of justice.  (*See* Ex. F attached to App. I; Ex. N attached to App. Q.)[10]

2.   Defective indictment.  (*See* Ex. F; Ex. H attached to App. K; Ex. L attached to App. O.)

3.   Prosecutorial misconduct.  (*See* Ex. F; Ex. L; Ex. P attached to App. S.)

4.   Selective prosecution.  (*See* Ex. M attached to App. P.)

5.   Improperly-impaneled grand jury.  (*See* Ex. F; Ex. G attached to App. J.)

6.   Unconstitutional obstruction-of-justice enhancement.  (*See* Ex. F; Ex. Q.)

7.   Erroneous denial of requested jury instructions.  (*See* Ex. F; Ex. K attached to App. N.)

8.   Unconstitutional use of "mug shot."  (*See* Ex. N at 5.)

9.   Trial court bias.  (*See* Ex F; Ex. N at 5.)

---

[9]  Because movant provides no specific summary of the claims he raises in the instant motion to vacate and numerous attachments and does not object to the government's characterization of his claims except to add four others, the Court addresses the thirteen claims listed by the government as well as the additional claims listed by movant.  Although movant alleges that the government did not address a claimed "Indictment Violation" as contained in Appendix K, the Court finds that it is adequately encompassed by the government's discussion relating to the second listed claim described as "defective indictment".  Thus, the Court addresses the sixteen claims collectively identified by the parties, albeit in a different order.

[10]  Because movant reiterates his claims in various portions of the attachments, the Court generally cites to the most specific portion or portions of the attachments.

10.   Unconstitutional use of prayer during trial proceedings.  (*See* Ex. N at 5-6.)

11.   Failure to depart downward from the sentencing guidelines when mitigating evidence existed to warrant such departure.  (*See* Ex. Q.)

12.   Ineffective assistance of counsel.  (*See* Apps. G and H.)

13.   Constructive denial of counsel.  (*See* App. H ¶ 12 (stating that counsel "in sum failed at all stages of the trial proceeding from the beginning to the end").)[11]

14.   Improper joinder of defendants for trial.  (*See* Ex. F; Ex. I attached to App. L.)

15.   Denial of right to present favorable witness when subpoenaed witness failed to appear to give trial testimony.  (*See* Ex. J attached to App. M; Ex. N at 4.)

16.   Denial of due process and equal protection.  (*See* Ex. O attached to App. R.)

The government asserts that movant is foreclosed from raising Claim 1 in the instant motion to vacate because the Fifth Circuit Court of Appeals has already ruled against him on that claim and that Claims 6 and 11 are not cognizable on collateral review.  (Resp. at 3-6.)  It also asserts that Claims 2, 3, 4, 5, 7, 8, 9, and 10 are procedurally barred from collateral review due to movant's failure to raise them on appeal.  (*Id.* at 6-7.)  With respect to Claim 12, the government asserts that there was no ineffective assistance of counsel and that movant's conclusory claims entitle him to no relief.  (*Id.* at 8-10.)  The government further asserts that movant was not constructively denied counsel as alleged in Claim 13.  (*Id.* at 10-11.)

In reply to the government's response, movant agrees that the Fifth Circuit decided Claim 1 against him and that Claims 6 and 11 are not cognizable on collateral review. (*See* Reply at 1.)  He

---

[11]  The government construes App. H ¶ 12 as asserting a claim of constructive denial of counsel.  (Resp. at 10.)  Because movant has voiced no objection to that construction and the construction has some basis in the filings of movant, the Court liberally construes movant's filings to raise a claim that he was constructively denied counsel.

contends, however, that the Court should consider such claims as "due process and equal protection violation [sic] resulting from ineffective assistance of counsel." (*Id.* at 1-2.) In reply to the procedural bar assertion, movant states that his "Appendix F" assigned all error to his attorney and thus established cause through ineffective assistance of counsel.[12] (*Id.* at 2.) In reply to the assertion that he was not denied effective assistance of counsel, he contends that "[h]ad counsel presented some of this [sic] claims, there was a reasonable probability that the result of the trial would have been different." (*Id.* at 3.)

## II.  JURISDICTION

Movant asserts four jurisdictional bases for the instant action – (1) 28 U.S.C. § 2255; (2) 28 U.S.C. § 2241; (3) the All Writs Act, 28 U.S.C. § 1651; and (4) the writ of prohibition. (*See* Mot. Vacate at 3; App. D at 2, attached to motion.) For the reasons that follow, § 2255 provides the proper jurisdictional basis for this action.

## A.  **All Writs Act**

Movant asserts that the Court has jurisdiction over this action under the All Writs Act, 28 U.S.C. § 1651. (*See* App. D at 2.) The Fifth Circuit has held, however, that "the All Writs Act does not confer an independent basis for subject matter jurisdiction." *Renteria-Gonzalez v. INS*, 322 F.3d 804, 811 (5th Cir. 2002); *accord Morris v. T E Marine Corp.*, 344 F.3d 439, 443 (5th Cir. 2003) (citing *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002)). Consequently, § 1651 provides no jurisdictional basis for this action.

---

[12] Movant also attributed all of his claims in Appendix D as well as all errors identified in his attached Exhibits A through R to ineffective assistance of counsel. (*See* App. D at 2 (stating that "Ineffective assistance of counsel is properly attached to all claims herein by Odiodio"); App. H at 3-4.)

## B. Writ of Prohibition

Movant also seeks to invoke the writ of prohibition as a basis for jurisdiction. (*See* App. D at 2.) However, such a writ is traditionally "used by appellate courts to exert their revisory powers over inferior courts, but is not an appropriate remedy to control the jurisdiction of other, nonsubordinate courts." *Siler v. Story,* 587 F. Supp. 986, 987 (N.D. Tex. 1984). The writ of prohibition provides no jurisdiction over the claims raised in the instant action.

## C. Section 2241 and Section 2255

Movant seeks to invoke both 28 U.S.C. §§ 2241 and 2255 as a basis for this action. (*See* Mot. Vacate at 3, *see also* App. D at 2.)

Section 2241(a) provides district courts the power to grant a writ of habeas corpus. An individual is entitled to a writ of habeas corpus under § 2241 only to remedy his or her restraint of liberty in violation of the constitution, treaties, or laws of the United States. *United States v. Hayman*, 342 U.S. 205, 211-12 & n.11 (1952). "Habeas corpus relief is extraordinary and 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). The remedy afforded under § 2241 is "no different" from the scope of remedy afforded under § 2255. *Id.* at 214.

A petition filed under § 2241 "is not . . . a substitute for a motion under § 2255." *See Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001). A motion under § 2255 "provides the primary means of collaterally attacking a federal conviction and sentence. Relief under this section is warranted for errors that occurred at trial or sentencing." *Id.* "A section 2241 petition that seeks to challenge the

8

validity of a federal sentence must either be dismissed or construed as a section 2255 motion." *See*

*Pack v. Yusuff*, 218 F.3d 448, 452 (5th Cir. 2000).  Nevertheless, § 2255 "contains a 'savings clause,'

which acts as a limited exception to this general rule." *Id.*  That clause provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized
> to apply for relief by motion pursuant to this section, shall not be entertained if it
> appears that the applicant has failed to apply for relief, by motion, to the court which
> sentenced him, or that such court has denied him relief, unless it also appears that
> the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255.  Because of this clause, "a section 2241 petition that seeks to challenge a federal

sentence or conviction-thereby effectively acting as a section 2255 motion-may only be entertained

when the petitioner establishes that the remedy provided for under section 2255 is inadequate or

ineffective." *Pack*, 218 F.3d at 452.  If an individual who has filed a § 2241 petition fails to show §

2255 to be inadequate or ineffective, then the Court lacks jurisdiction to consider the § 2241

petition.  *See Christopher v. Miles*, 342 F.3d 378, 379 (5th Cir.) (remanding a case for dismissal for

lack of jurisdiction when the petitioner failed to show § 2255 inadequate or ineffective), *cert. denied*,

540 U.S. 1085 (2003).

"[T]he burden of coming forward with evidence to show the inadequacy or ineffectiveness

of a motion under § 2255 rests squarely on the petitioner." *Jeffers*, 253 F.3d at 830.  Precedent

"regarding § 2255's savings clause makes clear that § 2241 is not a mere substitute for § 2255 and

that the inadequacy or inefficacy requirement is stringent." *Reyes-Requena v. United States*, 243 F.3d

893, 901 (5th Cir. 2001).

In this case, the savings clause of § 2255 does not permit movant to file an action under §

2241.  Movant has made no allegation that the remedy under 28 U.S.C. § 2255 is inadequate or

ineffective.  He provides nothing to carry his burden to show such inadequacy or ineffectiveness.
Section 2255 provides movant with a means to collaterally challenge his federal convictions.

Because § 2255 is neither inadequate nor ineffective to test the legality of movant's con-
victions, the Court considers the action as being filed exclusively pursuant to § 2255.

### III.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for
a narrow range of injuries that could not have been raised on direct appeal and would, if condoned,
result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996)
(citations and internal quotation marks omitted).  It is well established that "a collateral challenge
may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*)
(quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).  Defendants may only collaterally attack
their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the
omission and "actual prejudice" resulting from the asserted error.   *Shaid*, 937 F.2d at 232.  Even
then, any new assertion of error is limited to "issues of constitutional or jurisdictional magnitude."
*Id.*  The cause and prejudice test applies even to allegations of fundamental constitutional error.  *Id.*
The only exception to the application of the test is when a movant can establish a fundamental
miscarriage of justice, *i.e.*, that he or she is actually innocent of the crime convicted.  *Id.*

In this case, movant does not dispute the government's assertion that he failed to raise ten
of his claims on direct appeal.  Instead, he seeks to assert the miscarriage-of-justice exception to the
procedural bar doctrine by alleging that he is actually innocent of the crimes of which he has been
convicted.  "Actual innocence means 'factual innocence, and not mere legal insufficiency.'  To prove
actual innocence, the [movant] 'must demonstrate that, in light of all the evidence, it is more likely

10

than not that no reasonable juror would have convicted him.'" *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999).  He must show, "as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)).  Movant has not shown that, factually, he did not commit the crimes for which he was convicted.  He has not demonstrated that it is more likely than not that no reasonable juror would have convicted him in light of the evidence presented against him.  To the contrary, a jury did convict him.  He presents no claim that casts any doubt upon the evidence presented against him.  Thus, the miscarriage-of-justice exception to the procedural bar doctrine does not save movant from his procedural default on the majority of his claims.

To overcome the procedural bar caused by his failure to raise his claims (other than his insufficiency-of-the-evidence and ineffective-assistance-of-counsel claims) on direct appeal, movant also attempts to show cause and prejudice by assigning all errors to ineffective assistance of counsel. A showing of ineffective assistance of counsel satisfies the cause and prejudice standard.  *See United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).  Furthermore, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).  Accordingly, the Court considers those claims which Movant failed to raise on direct appeal within the context of ineffective assistance of counsel.

Finally, movant concedes that he previously raised his sufficiency of the evidence claim (Claim 1) on direct appeal, and that the Fifth Circuit denied him relief.  Defendants who collaterally

attack their federal convictions may not raise grounds previously raised on direct appeal. *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997). "The appellate process does not permit reruns." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979). Movant attempts to escape this prohibition on duplicate challenges by characterizing this claim as arising under due process or equal protection. He further asserts generally in Claim 16 that he has been denied his right to due process and equal protection. Because movant's general allegations of due process and equal protection violations relate to other specifically-identified claims in the ineffective-assistance-of-counsel context, the Court addresses those specific claims before addressing the general due process and equal protection claims.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM 12)

As noted above, movant assigns all error to ineffective assistance of counsel. In particular, he claims that his attorney rendered ineffective assistance in numerous specific respects commencing with a failure to advise him of the grand jury proceeding and continuing through his appeal.[13] (*See generally* App. H at 5-12.) He also asserts that a conflict of interest compromised the representation he received from his attorney, and that he was constructively denied counsel because his attorney failed him at every stage of the proceedings. (*See generally* App. G.; App. H at 5-12.) Movant also specifically alleges that his attorney rendered ineffective assistance on appeal by failing to raise or correct the alleged errors raised in the instant motion to vacate. (*Id.* at 14.)

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of

---

[13] The same attorney represented movant at trial and on appeal.

Counsel for his defense." U.S. CONST. art. VI.  To successfully state a claim of ineffective assistance

of trial or appellate counsel, movant must generally demonstrate (1) that counsel's performance was

deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*,

466 U.S. 668, 687 (1984); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).  A failure to

establish either of these prongs generally requires a finding that counsel's performance was consti-

tutionally effective.  *Strickland*, 466 U.S. at 696.  However, when a defendant has been constructively

denied counsel, the courts presume that he or she has been prejudiced thereby – no showing of

prejudice is required.  *United States v. Cronic*, 466 U.S. 648, 659-60 (1984).  "Ineffectiveness is also

presumed when counsel 'actively represented conflicting interests.'"  *Id.* at 661 n.28 (quoting *Cuyler*

*v. Sullivan*, 446 U.S. 335, 350 (1980)).

## A.  Applicable Standard of Review

In view of movant's claims of conflict of interest and constructive denial of counsel, the

Court must first determine the appropriate standard for evaluating his claims of effective assistance

of counsel.

### 1.  *Conflict of Interest*

When a prisoner shows an actual conflict that adversely affected his attorney's performance

and thus denied him his Sixth Amendment right to effective assistance of "conflict-free counsel,"

*Cuyler v. Sullivan*, 446 U.S. 335 (1980) provides the applicable standard for evaluating claims of

ineffective assistance of counsel.  *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).  As pre-

viously mentioned, a defendant may show ineffective assistance of counsel under *Cuyler* without

showing prejudice.  *Id.* at 781-82.  "Courts of appeals applying *Cuyler* traditionally have couched its

test in terms of two questions:  (1) whether there was an *actual* conflict of interest, as opposed to a

merely potential or hypothetical conflict, and (2) whether the actual conflict adversely affected counsel's representation." *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005). However, in 2002, the Supreme Court clarified that "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002). "Regardless of this clarification of the terminology, the relevant questions remain the same, and [the courts] must ask whether [defense counsel] labored under a conflict of interest, which was not merely hypothetical, and whether that conflict adversely affected the representation (*i.e.*, whether it was an actual conflict)." *Infante*, 404 F.3d at 392.

"A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Medina*, 161 F.3d 867, 870 n.1 (1998) (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)) (alteration in original) (internal quotation marks omitted). There is no actual conflict of interest, however, unless "defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo*, 205 F.3d at 781. The Fifth Circuit Court of Appeals has held that the *Cuyler* standard applies only to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation. *See Beets v. Scott*, 65 F.3d 1258, 1270-72 (5th Cir. 1995) (en banc). The standard enunciated in *Strickland* applies when a prisoner alleges a conflict of interest of a different ilk. *See id.* at 1272. Whether a conflict of interest exists is a "highly fact-intensive" question that is dependent upon numerous factors. *Infante*, 404 F.3d at 392.

### a.  Officer of the Court

In this case, movant first asserts that an alleged conflict arises because his attorney, as an officer of the Court, is a "government agent" that has a duty to the Court which prevails over his duty to his client and therefore cannot provide him "conflict-free" representation.  (App. G at 4-8.) He further argues that because of such conflict, his attorney could not assert his claim that the Court lacked jurisdiction to convict him, inform him about "the several defects in the indictment", or "compromise the government's case."  (*Id.* at 8-9.)

That attorneys may have ethical duties and duties to the Court that may take precedence over duties to their clients does not create an actual conflict of interest.  *See United States v. Litchfield*, 959 F.2d 1514, 1518 (10th Cir. 1992) (finding no "actual conflict of interest and no ground for an ineffective assistance of counsel" when defense counsel informed the trial court that he feared that his client would testify falsely).  Attorneys have no duty to the Court to refrain from asserting that the Court lacks jurisdiction over a particular matter.  Attorneys have no duty to the Court to refrain from informing their clients of perceived deficiencies in an indictment.  Attorneys have no duty to the Court to refrain from compromising the government's case.  Movant has ident-ified no conflict between duties that his attorney owed to the Court and duties that the attorney owed to him.  Were the Court to accept movant's position based upon divided loyalty between the Court and client, it would eviscerate the *Strickland* standard entirely.  Furthermore, because the conflict alleged by movant does not involve representation of multiple clients such a conflict does not invoke the *Cuyler* standard under binding Fifth Circuit precedent.

15

### b.  Attorney Fees Paid by Government

Movant also suggests that his attorney had a conflict of interest because the government paid his fees.  (App. G at 5.)  This suggested conflict is facially without merit.  *See United States v. Francies*, No. 01 C 0109, 2002 WL 31415496, at *5 (N.D. Ill. Oct. 24, 2002) (addressing identical conflict-of-interest claim).  The *Francies* court aptly stated:

> The sixth amendment guarantees that felony defendants have the right to the assist-ance of counsel at trial, and that if the defendant cannot afford to hire a lawyer, one will be appointed to represent the defendant.  *See generally Gideon v. Wainwright*, 372 U.S. 335 (1963).  Criminal defendants also have the right to represent themselves at trial, if they choose to do so.  *See e.g. McKaskle v. Wiggins*, 465 U.S. 168 (1984). . . . Lawyers do not work for free, and the fact that appointed counsel was paid by the Government does not mean that counsel suffered from a conflict of interest.  [Mov-ant] must present some evidence of an actual conflict of interest, and evidence that the conflict affected counsel's representation.  *See Mickens*, 122 S. Ct. at 1240-46. [Movant] fails to present evidence of either point.

*Francies*, 2002 WL 31415496, at *5.  For the reasons stated in *Francies*, movant's claim of conflict in this case based upon fee payment fails.  To hold otherwise would mean that there would be an inherent conflict of interest in every case in which an indigent defendant is appointed counsel at the government's expense.  Such holding is not tenable.

In conclusion, the Court finds no actual conflict of interest in this case.  The *Strickland* standard of review thus applies unless movant can shows that he was constructively denied counsel.

### 2.  *Constructive Denial of Counsel (Claim 13)*

In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court recognized that a defend-ant might be constructively denied counsel although an attorney had been appointed to represent him.  466 U.S. at 654 n.11 ("[T]he performance of counsel may be so inadequate" as to constitute no assistance of counsel at all).  A defendant is constructively denied counsel when his attorney "en-

16

tirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 659. However, unless there is a constitutional error of such magnitude that "no amount of showing of want of prejudice would cure" the error, "there is generally no basis for finding a Sixth Amendment violation" in the absence of a showing of "how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659 & n.26. Furthermore,

> [c]ircumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.

*Id.* at 659-60.

The presumed prejudice standard of *Cronic* is reserved for "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658. The *Cronic* standard does not apply when defense counsel has merely failed to oppose the prosecution at specific points of the proceedings – it applies only when counsel has *entirely* failed to challenge the prosecution's case. *Bell v. Cone*, 535 U.S. 685, 697 (2002). When counsel provides "some meaningful assistance", the *Cronic* standard is inapplicable. *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986). Movant has the burden to show that he was constructively denied counsel. *See Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997).

In this instance, movant has not carried that burden on his allegations in Claim 13 that he was constructively denied counsel due to consistent failings of his attorney throughout his criminal proceedings. (*See* App. H ¶ 12.) The record shows that defense counsel subjected the prosecution's case to meaningful adversarial testing. Counsel did not entirely fail to challenge the prosecution's case. Among other things, defense counsel filed pretrial motions, cross-examined government

witnesses, and called witnesses on movant's behalf.  At sentencing, counsel convinced the Court to reduce movant's total offense level by two points and to reduce the amount of restitution.  (*See* Sentencing Tr. at 2-3.)  Counsel also successfully appealed movant's conviction for bank fraud. Under these facts, counsel clearly provided more than "some meaningful assistance."  The *Cronic* standard is thus inapplicable and movant's claim that he was constructively denied counsel entitles him to no relief under § 2255.  Consequently, the Court finds no constructive denial of counsel and denies relief based upon Claim 13.  In order to succeed on any claim of ineffective assistance of counsel, movant must satisfy the two-part *Strickland* test.

### 3.  *Strickland Test*

To succeed on his ineffective-assistance claims, movant must show a deficiency of counsel that prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  This test applies to allegations of ineffective assistance of trial and appellate counsel.  *See United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).  A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective.  *Strickland*, 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient under *Strickland*, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.

With respect to alleged deficiencies of appellate counsel, an attorney need not raise every non-frivolous issue on appeal to be effective.  *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).  "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective

18

standard of reasonableness.'" *Phillips*, 210 F.3d at 348 (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel renders deficient performance by not raising claims on appeal, the Court must consider whether the omitted challenges "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

To establish prejudice under *Strickland*, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the case of ineffective assistance at sentencing, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney. *Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001). In other words, the movant must show that counsel's deficiencies created a reasonable probability that his sentence would have been less harsh. *See id.* at 200. Movants must "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and

conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

Movant specifically asserts numerous[14] deficiencies of counsel. (*See* App. H at 5-12.) The government contends that such assertions are general and conclusory and thus entitle movant to no relief. (Resp. at 8.) In reply to such contention, movant indicates that pages twelve to fourteen of his Appendix H establishes "all" the prejudice resulting from his § 2255 claims. (Traverse at 2.) Within his traverse he submits "additional prejudice" from his attorney's deficiencies. (*See id.* at 2-5.) With the standards set forth in *Strickland* and its progeny in mind, the Court proceeds to consider the various claims raised by movant.

## B. Improperly-Impaneled Grand Jury (Claim 5)

With respect to Claim 5, movant alleges that his attorney failed to advise him of the grand jury proceeding and thus deprived him the opportunity to challenge the grand jury array. (App. H. at 5; Ex. G at 3.) He claims that "[h]ad counsel contest[ed] the Grand Jury array", he would have discovered the following defects which would have resulted in the dismissal of the indictment against him: (1) his grand jury array was not selected at random from a fair cross section of the community; (2) the array contained no one from Tarrant County, Texas, his place of residence and location of the alleged offense; and (3) the array contained no one between the ages of eighteen and twenty-

---

[14] The government indicates that movant has specified "at least 60 instances of what he considers to be deficient conduct by his counsel." (Resp. at 8.)

one.  (App. H. at 12.; Ex. G. at 1, 6; Traverse at 3-4.)  He argues that such defects violated his right to a grand jury composed from a "fair cross section of the community" and deprived the grand jury of jurisdiction to indict him.  (Ex. G at 6, 9-10.)

"It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division where the court convenes."  28 U.S.C. § 1861.  Section 1867 of Title 28 of the United States Code provides a mechanism for challenging compliance with grand jury selection procedures.  To succeed on such challenge, a criminal defendant must show a "substantial failure to comply with the provisions of [Title 28] in selecting the grand or petit jury."  28 U.S.C. § 1867(a).  A substantial failure "destroys the random nature or objectivity of the selection process."  *United States v. Olaniyi-Oke*,  199 F.3d 767, 772 (5th Cir. 1999).  In addition, to establish "a *prima facie* violation of the fair-cross-section requirement", the defendant

> must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group . . . is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 773.  A defendant does not "establish a *prima facie* violation by relying solely on the composition" of the jury assembled in his case.  *Id.*

In this instance, movant asserts that he believes that his grand jury had defects in its composition, but he makes no such showing.  In the last affidavit of record contained within Exhibit A of his motion to vacate, he specifically indicates that there is "[n]o record of Grand jury members

found on the Record." (*See* Aff. Record IV at 7.)[15]  Even if movant could show the alleged defects in the composition of his grand jury, such alleged defects would be insufficient to successfully establish a *prima facie* violation of the fair-cross-section requirement.  He has not shown any failure that destroyed the random nature or objectivity of the grand jury selection process.

Movant has provided no basis upon which his attorney could have legitimately based a challenge to the grand jury array.  Attorneys do not render deficient performance by failing to assert a meritless challenge to the composition of the grand jury.  Moreover, movant has shown no prejudice from any failure of his attorney to challenge the grand jury array.  He has provided nothing to show that such challenge would have succeeded.  The Court finds no ineffective assistance of counsel related to advising movant of the grand jury proceeding or challenging the grand jury array.

## C.  Defective Indictment (Claim 2)

With respect to Claim 2, movant claims that his attorney failed to seek dismissal of his indictment as defective, and that "[h]ad counsel [sought] a dismissal of the indictment", he would have discovered defects which would have caused the dismissal of the indictment against him.  (App. H. at 5, 12.)

The indictment in this case alleged that movant and his co-defendant knowingly, willfully, and intentionally devised "a scheme and artifice to defraud and to obtain money, goods and services from various financial institutions."  (Superseding Indictment ¶ 1.)  In pertinent part, Count 6 charged movant with wire fraud in violation of 18 U.S.C. § 1343 as follows:

---

[15] Exhibit A consists of four affidavits of record:  (1) a three-page affidavit addressed to Schwab; (2) a four-page affidavit addressed to Wells Fargo; and (3) a twenty-nine-page affidavit that is captioned "IN THE MATTER OF:  BONIFACE SULEMAN ODIODIO"; and (4) a twenty-two-page affidavit that reflects "Allen Parish, State of Louisiana."  The Court will respectively refer to these affidavits as Aff. Record I, Aff. Record II, etc.

> On or about April 20, 1999 . . . defendant, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and sounds, namely fraudulently obtained funds in the amount of $251,370.33 to be wire transferred out of [a] Charles Schwab account . . . into [a] Wells Fargo Bank account . . . in Fort Worth, TX.

(*Id.* at 9.) Count 7 charged movant with bank fraud in violation of 18 U.S.C. § 1344 by knowingly executing and attempting to execute a scheme and artifice to defraud Wells Fargo "and to obtain and attempt to obtain monies, funds, and credits owned by and under the care, custody, and control of Wells Fargo Bank by means of false and fraudulent pretenses and representations." (*Id.* at 10.) In pertinent part, Count 8 charged him with money laundering in violation of 18 U.S.C. § 1957 as follows:

> On or about April 21, 1999, the defendant . . . knowingly engaged in a monetary transaction in criminally derived property of value greater than $10,000.00, and which property was derived from a specified unlawful activity, to wit, Title 18, United States Code, Section 1344, bank fraud, in that the defendant . . . caused fraudulently obtained funds in the amount of $60,000.00 to be wire transferred out of Wells Fargo Bank account . . . in the name of World Capital Trust Ltd to National Westminster Bank . . . for the benefit of Ameachi Uzoh.

(*Id.* at 11.)

Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure requires any "motion alleging a defect in the indictment or information" to be made before trial, except for motions which allege that "the indictment or information fails to invoke the court's jurisdiction or to state an offense."[16] When a defendant fails "to challenge the criminal complaint in a pretrial motion to dismiss the indictment", he waives "any defect in the criminal complaint, and his contention[s are] unreview-

---

[16] Although Rule 12(b) was amended in 2002 to "more clearly delineate[] those motions that *must* be filed pretrial and those that *may* be filed pretrial", such amendment intended "[n]o change in practice." *See* Fed. R. Crim. P. 12 advisory committee notes (2002 amend.).

able." *United States v. Glover*, 277 F.3d 1373 (5th Cir. 2001) (unpublished table decision citing *United States v. Smith*, 890 F.2d 711, 715 (5th Cir. 1989); Fed. R. Crim. P. 12(b)(1)).

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). Federal district courts exceed their "powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant." *Id.* at 255. In addition, "errors before the grand jury will often be deemed harmless if the defendants were subsequently and properly convicted before an impartial petit jury." *United States v. Flores-Rivera*, 56 F.3d 319, 328 (1st Cir. 1995). "[T]he fact that the defendants were convicted by a petit jury acts as a cure for any error which may have resulted during grand jury proceedings." *United States v. Valencia-Lucena*, 925 F.2d 506, 511 (1st Cir. 1991). "An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on its merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). "Neither justice nor the concept of a fair trial requires" a rule that would permit defendants to challenge their "indictments on the ground that they are not supported by adequate or competent evidence." *Id.* at 364. Courts "should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is a preliminary phase of the criminal justice process and all constitutional protections will be afforded during trial." *United States v. Maceo*, 873 F.2d 1, 3 (1st Cir. 1989). Once a defendant has been found guilty at trial, "the petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted." *United States v. Mechanik*, 475 U.S. 66, 67 (1986).

Mindful of these principles and the superseding indictment against movant, the Court proceeds to the specific alleged defects upon which the claims of ineffective assistance of counsel are based.

### 1. *Sufficiency of Indictment*

Movant challenges the sufficiency of the indictment and contends that his attorney should have moved to dismiss it based upon its insufficiency.  (*See generally* Exs. F and H.)

To be constitutionally sufficient, an indictment must "allege[] every element of the crime charged and in such a way as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in a subsequent proceeding." *United States v. Partida*, 385 F.3d 546, 554 (5th Cir. 2004), *cert. denied*, ___ U.S. ___, 125 S. Ct. 1616 (2005).  "An indictment is sufficient if (1) it contains the elements of the offense charged, (2) it 'fairly informs' the defendant of the charge he must meet, and (3) there is no risk of future prosecutions for the same offense." *United States v. Lankford*, 196 F.3d 563, 569 (5th Cir. 1999) (quoting *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir. 1991)).

In this instance, the indictment sets forth every element of wire fraud and money-laundering. It has sufficiently informed movant of the allegations against him.  There is no risk of future prosecutions for the same offense.  Movant concedes that fact in his attachments to his motion to vacate. (*See* Ex. H at 3.)  The Court thus finds the indictment constitutionally sufficient.  Consequently, the Court finds no ineffective assistance of counsel related to the sufficiency of the indictment.  Attorneys do not render deficient performance by failing to assert a meritless challenge to an indictment. Moreover, movant has shown no prejudice from any failure of his attorney to challenge the suffic-

iency of his indictment at trial or on appeal. He has provided nothing to show that such challenge would have succeeded.

### 2. *Result of False or Perjured Testimony*

Movant also claims that his attorney should have moved to dismiss the indictment as defective because it resulted from false or perjured grand jury testimony. This claim relates to the ownership of $251,000 by Wells Fargo alleged in the bank fraud charge in Count 7 of the indictment against movant. (*See* Aff. Record III ¶ 35; Superseding Indictment at 10.)

The proper vehicle to obtain dismissal of an indictment that has "been obtained by false testimony" is to file a pretrial motion pursuant to Fed. R. Crim. P. 12. *United States v. Smith*, 890 F.2d 711, 715 (5th Cir. 1989). Furthermore, "perjury before the grand jury that was not knowingly sponsored by the government may not form the basis for a district court's dismissal of an indictment under its supervisory power" over the grand jury process. *United States v. Strouse*, 286 F.3d 767, 772 (5th Cir. 2002). To find that a witness has committed perjury, the Court must find that a "witness testifying under oath or affirmation" gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993).

In this instance, movant has not shown that the government knowingly sponsored perjured grand jury testimony related to the ownership of the $251,000. He merely points to Count 7 of the indictment which indicates that Wells Fargo owned property obtained from it. He provides no basis for finding that any grand jury witness committed perjury. He provides nothing to indicate that any witness willfully intended to provide false testimony. In addition, he provides no basis to find that

the government knowingly sponsored any perjured grand jury testimony. Consequently, he has shown no ineffective assistance of counsel relating to perjured grand jury testimony.

Furthermore, to convict an individual of bank fraud, the government must show that the individual knowingly executed or attempted to execute a scheme or artifice "to defraud a financial institution" or "to obtain . . . property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." *See* 18 U.S.C. § 1344. An indictment based upon § 1344 may arise without the government showing or alleging that the financial institution owned the property obtained from the financial institution. Deprivation of owned property is but one avenue to obtain a conviction for bank fraud. Thus, had counsel succeeded on dismissing Count 7 of the indictment in its present form, such success does not mean that the government would have been unable to ultimately indict and convict movant of bank fraud. Moreover, because the Court has in fact dismissed Count 7, movant can show no prejudice from grand jury testimony related to that count even if counsel rendered deficient performance by not seeking dismissal of that count because it was based on false or perjured testimony.

### 3. *Defect Stemming from Reversal of Bank Fraud Conviction*

Movant further claims that the indictment against him became fatally defective when the court of appeals reversed his bank fraud conviction, and that his attorney should have moved to dismiss it on this basis. Movant has already presented the underlying claim in his prior appeals; the court of appeals construed it as a challenge to the sufficiency of the evidence and ruled against him. *See Odiodio I*, *supra*, at 404; *Odiodio II*, *supra*, at *1. The Fifth Circuit specifically held that bank fraud "is not an element of money laundering." *Odiodio I* at 404. This Court will not revisit the issue.

27

Furthermore, an indictment charging money laundering need not allege "details about the nature of the unlawful activity underlying the [money laundering]." *United States v. Cherry*, 330 F.3d 658, 667 (4th Cir. 2003) (quoting *United States v. Smith*, 44 F.3d 1259, 1265 (4th Cir. 1995)).  An indictment sufficiently charges a defendant with money laundering even though it does not allege elements of specified unlawful activity.  *See United States v. Caldwell*, 302 F.3d 399, 413 (5th Cir. 2002) (citing *Smith*, 44 F.3d 1259 with approval).  It was thus unnecessary for Count 8 of the indictment in this case to have alleged the elements of the specified unlawful activity, *i.e.*, bank fraud.  *See Cherry*, 330 F.3d at 668.  "It was sufficient for [Count 8] to have alleged, as [it] did, that the money laundering transactions involved funds derived from a specified unlawful activity, and that such activity violated 18 U.S.C. § [1957]."  *See id.*

For these reasons, the indictment in this case did not become defective when the court of appeals reversed movant's bank fraud conviction.  Consequently, a claim of ineffective assistance based upon such claim also entitles movant to no relief.

### 4. *Constructive Amendment*

Movant also claims that this Court and the court of appeals constructively amended the indictment, and that both his trial attorney and appellate counsel were ineffective for failing to object or raise this claim.

"A constructive amendment to the indictment occurs when the jury is permitted to convict the defendant on a factual basis that effectively modifies an essential element of the offense charged in the indictment."  *United States v. Millet*, 123 F.3d 268, 272 (5th Cir. 1997).  However, not "all factual variations . . . rise to the level of a constructive amendment" – a distinction exists "between

28

a constructive amendment to the indictment and mere variations between the indictment and proof." *Id.*

The Court finds that neither the District Court nor the Fifth Circuit constructively amended the indictment. The jury was not permitted to convict movant on a factual basis that effectively modified any essential element of the offenses charged against him. Because there has been no constructive amendment of the indictment, there is also no ineffective assistance of counsel related to such amendment. Trial counsel had no basis to object to the alleged constructive amendment. Appellate counsel had no basis to present such a claim to the court of appeals.

### 5. *Result of Errors During Grand Jury Proceedings*

Movant claims that his attorney was ineffective for failing to move to dismiss the indictment as defective based on errors during the grand jury proceedings. In particular, he claims that the indictment contained material errors of fact and was completely defective as to Counts 6, 7, and 8. He also claims that the grand jury indicted him even though the evidence presented was inadequate to show probable cause. Finally, he contends that the grand jury did not act independently from the prosecutor and was improperly influenced by false claims of bank fraud.

In this instance, movant was found guilty at trial after he and his co-defendant were afforded ample opportunity to cross-examine the government's witnesses. He has demonstrated no prejudice from the alleged errors during the grand jury proceedings, and his conviction at trial cures any such alleged error. Thus, movant has shown no ineffective assistance of counsel related to the grand jury proceedings. Movant provides no basis upon which his attorney could have obtained dismissal of the indictment. Attorneys do not render deficient performance by failing to file a futile motion to dismiss the indictment. Moreover, movant has shown no prejudice from any failure of his attorney

to seek dismissal of the indictment based upon the alleged errors occurring during the grand jury proceedings, and he has provided nothing to show that such action would have succeeded.  The Court finds no ineffective assistance of counsel.

In conclusion, the Court finds no ineffective assistance of counsel related to seeking dismissal of the indictment based upon the alleged errors addressed in this section.

## D.  Prosecutorial Misconduct Claims

Movant raises various claims of prosecutorial misconduct and alleges that his attorney was ineffective by failing to "expose" the misconduct which harmed his right to a fair trial.  (*See generally* Exs. F, L, and P and App. H. at 8, 13.)  The Court addresses each alleged violation in turn.

### 1.  *Selective Prosecution (Claim 4)*

With respect to Claim 4, movant claims that his attorney failed to object to the government's selective prosecution of him in violation of the Fifth Amendment to the United States Constitution. (App. H. at 8; Traverse at 4; *see generally* Ex. M.)  He contends that he was prosecuted because of his race and national origin because he, an individual from Nigeria, was prosecuted whereas Mukherjee, of Indian ancestry,[17] was not.  (Ex. M at 1-3.)  He submits that the actions and statements of the Assistant United States Attorney and an agent of the FBI show such selective prosecution.  (*Id.* at 3.)

At trial, the government addressed the reason that Mukherjee was not prosecuted.  Agent Seabrooke of the FBI testified that he made a distinction "between Uzoh causing Mukherjee to do

---

[17]  Such ancestry is noted in the government's opening statement.  (*See* Tr. I at 102.)

[the crime] and Odiodio doing it himself, even if Uzoh is standing there next to him telling him to [do the crime]." (Tr. II at 207.) During closing argument the prosecuting attorney stated:

> Mr. Mukherjee, it's possible, it's conceivable that he knew about this. It's conceivable. And if the mistake was made on that, and if he should have been charged, too, then I'll tell you where to put the blame, it's not on those guys, it's not on the court, it's right here. The buck stops here. I made that decision. . . .

(Tr. III at 211.)

In general, the decision to prosecute an individual "rests entirely" within the discretion of the prosecutor. *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Consequently, a "presumption of regularity" exists to support decisions to prosecute a particular individual and, "'in the absence of clear evidence to the contrary, courts presume that [the prosecutors] have properly discharged their official duties.'" *Id.* (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14-15 (1926)). Prosecutors, however, do not possess unbridled discretion – their "discretion is subject to constitutional constraints" such as the constraint "imposed by the equal protection component of the Due Process Clause of the Fifth Amendment" which mandates that the prosecutorial decision "may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (citations and internal quotation marks omitted).

To succeed on a selective prosecution claim, a defendant must show "a discriminatory effect" and a discriminatory motive behind the prosecutorial decision. *Id.* at 465. A defendant "must make a *prima facie* showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted" and "that the government's selective prosecution of him has been constitutionally invidious." *See United States v. Ramirez*, 765 F.2d 438,

439-40 (5th Cir. 1985).   Due to the presumption that the government undertakes prosecutions in good faith, defendants alleging selective prosecution bear a heavy burden of proving facts sufficient to satisfy these two requirements.  *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999).  "[C]onclusional allegations of impermissible motive are not sufficient" to make a *prima facie* showing of impermissible motive or bad faith.  *Ramirez*, 765 F.2d at 440.  When the defendant makes the requisite *prima facie* showing, "the burden shift[s] to the government to demonstrate that the prosecution was not premised on an invidious objective."  *Tracey v. United States*, 739 F.2d 679, 682-83 (1st Cir. 1984); *accord United States v. Greene*, 697 F.2d 1229, 1235 (5th Cir. 1983).

Movant has not carried his burden to show a *prima facie* case of selective prosecution.  The mere fact that the government did not prosecute Mukherjee does not suffice.  He must also show that he was prosecuted because of some impermissible basis, which he has not done.  Assuming that the Seabrooke testimony is relevant to the prosecutorial decision, such testimony does not show any invidious discrimination, but merely, perceived differences in the culpability between movant and Mukherjee.  While the closing statements reflect a conscious decision to prosecute one individual and not another, the prosecutor's statements provide no basis for finding *unconstitutional* selective prosecution.[18]  "The mere existence of some selectivity by the government in instituting prosecutions is not *per se* constitutionally prohibited."  *Ramirez*, 765 F.2d at 440.  Movant has made no *prima facie*

---

[18] Indeed, the prosecutor stated seemingly legitimate reasons for not prosecuting Mukherje:
> [Odiodio] said there is no difference between himself and Mr. Mukherjee.  The differences are stark and very real, and they start off with all of the lies and misrepresentations that Mr. Odiodio took after this money came into his account.  They also go to this.  Mr. Mukherjee was scared to death of Mr. Uzoh.  Mr. Uzoh had threatened him, he had threatened his family.  He barely even knew the guy. . . . Stark contrast with Mr. Odiodio.  He had known [Uzoh] since 1987.

(Tr. III at 209.)

showing of any unconstitutional motive for his prosecution.  "Absent some invidious element, the government's decision to prosecute cannot be challenged."  *Id.*

Because movant has presented no clear evidence to show unconstitutional selective prosecution, the Court presumes that the prosecutor properly discharged his official duties.  Counsel thus had no basis to object to the prosecution of movant as motivated by impermissible reasons.  Movant has shown no basis for a claim of selective prosecution.  He has shown no deficiency of counsel with respect to such claim.  He has presented insufficient facts to raise a reasonable doubt about the prosecutor's purpose.  Consequently, all claims related to his alleged selective prosecution fail.

### 2. *Improper Joinder (Claim 14)*

With respect to Claim 14,[19] movant contends that his attorney failed to file a motion to sever his trial from his co-defendant's trial.  (Ex. I at 3; App. H. at 5.)  He asserts that had counsel obtained a severance, he "could have been better able to proof/rebut the element of intent and knowledge which would have affected the jury verdict and place the government on full burden of proof."  (App. H at 13.)  He further asserts that, had counsel moved to sever his case from that of his co-defendant, "there was a reasonable probability that the district court may have granted the motion or the claim preserved for appeal."  (Traverse at 4.)  He also asserts that a reasonable probability exists that "spill over evidence" from his co-defendant prejudiced his defense.  (*Id.*)  In addition, he asserts that he was prejudiced by the joint trial because he and his co-defendant sat together at trial and because he was unable to call his co-defendant as a witness.  (*See* Ex. I at 1.)

---

[19] Claim 14 concerns movant's claim that his right to a fair trial was violated by the joint trial.  (*See generally* Ex. I.)

The decision not to seek a severance generally falls within the range of reasonable trial strategy. *See, e.g., Barrientes v. Johnson*, 221 F.3d 741, 775-76 (5th Cir. 2000). Movant provides nothing to rebut the presumption that the decision to try movant with his co-defendant was a matter of reasonable trial strategy.

Moreover, movant has provided no basis for severing his trial from that of his co-defendant. "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Although Fed. R. Crim. P. 14 provides relief from a prejudicial joinder of offenses or defendants, courts should grant a severance under Rule 14 "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

Movant claims that he wanted to call his co-defendant to testify but was unable to do so because of their joint trial. Before a court considers a severance based upon such a claim, the defendant must show that his co-defendant would have provided exculpatory testimony and that a likelihood existed that the co-defendant would have testified had there been a severance. *See Byrd v. Wainwright*, 428 F.2d 1017, 1020-22 (5th Cir. 1970). Movant has not made this showing. He has not shown that the joint trial prevented him from presenting exculpatory evidence which was unavailable because of the combined trial. He has also not shown any evidence presented solely against his co-defendant that prejudiced his defense. His assertion of prejudice based upon "spill over evidence" from his co-defendant is insufficient. "A spillover effect, by itself, is an insufficient predicate for a motion to sever." *United States v. Bieganowski*, 313 F.3d 264, 288 (5th Cir. 2002).

34

Because movant has shown no basis for obtaining a severance, counsel did not render deficient representation by failing to seek such severance or raise the issue on appeal. Attorneys are "not required by the Sixth Amendment to file meritless motions." *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). The lack of basis for such severance, furthermore, also dictates a finding of no prejudice from the failure to seek a severance or raise the claim on appeal. Claims related to movant's joint trial with his co-defendant provide no basis for § 2255 relief.

### 3. *Introduction of Mug Shot at Trial (Claim 8)*

In Claim 8, movant asserts that the government engaged in misconduct when it introduced his "mug shots" at trial, and that counsel failed to object.[20] (*See* Ex. N at 5.) He contends that such evidence impermissibly showed that he had previously been in custody and was a "known criminal." (*Id.*)

The admission of mug shots may prejudice the criminal defendant depicted in the photograph. *See United States v. Carrillo*, 20 F.3d 617, 620 (5th Cir. 1994). Nevertheless, such admission is within the discretion of the trial court, and the Fifth Circuit has

> adopted a three-part test for determining the admissibility of mugshots: (1) The government must have a demonstrable need to introduce the photographs; (2) the photographs must not imply that the defendant has a criminal record; and (3) the manner of introduction at trial must not draw attention to the source or implications of the photographs.

*Id.* Furthermore, "[w]here all police or prison identification numbers, notations or other indicia have been completely excised, most courts have held that it is permissible to introduce photographs of a

---

[20] Although movant does not specifically mention such misconduct when he asserts his claims of ineffective assistance of counsel, he does attribute all alleged errors to counsel in an attempt to overcome the procedural bar for failure to raise the claim on direct appeal. Liberally construing his pleadings, the Court finds that it reasonably appears that movant contends that his attorneys rendered ineffective assistance by failing to object to the admission of the "mug shots" and to raise the issue on appeal.

defendant." *United States v. Torres-Flores*, 827 F.2d 1031, 1036 (5th Cir. 1987). In addition, the admission of damaging photographs can be harmless error. *See United States v. Rixner*, 548 F.2d 1224, 1226 (5th Cir. 1977).

In this instance, movant does not identify the particular governmental exhibit that he alleges prejudiced him, but Exhibit 51 appears to be the only exhibit to which movant could be referring. Exhibit 51 was identified during trial by Leigh Ann Farr, a personal banker who transacted business with movant, as a "photo spread" from which she identified movant. (Tr. II at 90-93.) The Court thereafter admitted Exhibit 51 without objection. (*Id.* at 93.)

Although movant characterizes the "photo spread" as his "mug shots", Exhibit 51 contains no indicia that suggests a prior criminal record by movant. Each of the six photos in the spread contains a head shot of a different individual and has an unspecified number beneath it. There is no indication in the photo array that the number represents a police or prison identification number. The photo spread thus appears admissible without regard to the three-factor test related to mug shots. The admitted photo simply gives no indication that it is movant's mug shot. Consequently, the prosecutor engaged in no misconduct by offering Exhibit 51, the Court committed no error in admitting the exhibit, and defense counsel rendered no deficient performance by not objecting to the proffered exhibit. Because the Court did not err in admitting the exhibit, the failure of appellate counsel to present the issue to the court of appeals does not constitute deficient performance.

Even if the Court were to apply the three-part test for mug shots, the result would not differ. The circumstances of the admission of Exhibit 51 shows that the government had a demonstrable need to introduce the photograph – bolstering the in-court identification. As already discussed, furthermore, the photo does not imply that movant had a criminal record. Additionally, the manner

36

in which the government introduced the photo at trial did not draw attention to the source of the photograph or any implication of such photograph.  The three-part test supports the admission of the photograph.  Consequently, the Court finds no prosecutorial misconduct or ineffective assistance of counsel related to its admission.  In addition, because the issue has insufficient merit to present to the court of appeals, appellate counsel did not render deficient performance by not presenting it.

Finally, even if the Court were to find error in the admission of Exhibit 51, such error would be harmless.  There is no reasonable possibility that the introduction of such exhibit contributed to the verdict.  Because such error would be found harmless, neither trial nor appellate counsel rendered ineffective assistance related to the exhibit's admission.  Under *Strickland*, movant must establish both that "his attorneys acted objectively unreasonably in failing to object and that he was prejudiced by the failure."  *Vuong v. Scott*, 62 F.3d 673, 684 (5th Cir. 1995) (citing *Strickland*, 466 U.S. at 687).  Assuming that the failure to object was objectively unreasonable, movant has still not shown that he was prejudiced by his attorney's failure to object.  Movant has not shown that an objection by his attorney would have created a reasonable probability that the outcome of trial would have been different.  The admission of Exhibit 51 does not undermine confidence in the verdict or sentence.  In addition, failure to present a harmless error to the appellate court does not constitute ineffective assistance of counsel on appeal.

### 4. *Subornation of Perjury or False Testimony (Claim 3)*

As part of his third claim, movant asserts ineffective assistance of counsel on the grounds that the prosecutor obstructed justice, committed fraud and cover up, and suborned perjury, and that the jury was improperly influenced by false testimony from the government's witnesses.  (*See* Ex. F at

Part B(III) and (V).)[21]  More specifically, movant asserts that the government used false testimony from Wells Fargo regarding its ownership of $251,000.  (*See* Ex. L at 2; Ex. P at 5.)  He further asserts that false testimony from Agent Von Bose of the FBI regarding whether movant had been to the FBI office in Fort Worth, Texas, prejudiced the jury.  (Ex. L at 1-2; Aff. Record IV ¶ 14; Ex. C at 18.)

A conviction "must be reversed on due process grounds where the government knowingly elicits, or fails to correct, materially false statements from its witnesses." *United States v. Haese*, 162 F.3d 359, 365 (5th Cir. 1998).  To obtain collateral relief based upon use of perjured testimony, movant must show that the testimony was actually false, the prosecutor knew it was false, and the evidence was "material, *i.e.*, a highly significant factor reasonably likely to have affected the jury's verdict." *Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir. 1994); *accord Hafdahl v. Johnson*, 251 F.3d 528, 532-33 (5th Cir. 2001).  The United States Supreme Court has "treated 'reasonable likelihood' as synonymous with 'reasonable possibility' and thus ha[s] equated materiality in the perjured-testimony cases with a showing that suppression of the evidence was not harmless beyond a reasonable doubt." *See Strickler v. Greene*, 527 U.S. 263, 299 (1999) (Souter, J., concurring).  The Supreme Court has defined the harmless-beyond-a-reasonable-doubt standard as no "'reasonable possibility' that trial error contributed to the verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

With respect to the testimony from Agent Von Bose, movant has not shown the testimony to be false or that the government knew such testimony was false.  He has also not shown the testimony to be material to his convictions.  For all of these reasons, the Court finds no misconduct with

---

[21] Because Exhibit F contains no page numbers, the Court refers to its particular subparts.

respect to the Von Bose testimony.  Similarly, it finds no ineffective assistance of counsel related to such testimony.

With respect to the trial testimony regarding ownership of the $251,000, the Court finds the testimony immaterial to movant's convictions for wire fraud and money laundering.  Because the testimony relates only to the bank fraud charge that has been dismissed, there is no reasonable likelihood that the testimony affected the jury's verdict on movant's existing convictions.  Thus, even were the Court to assume that the government knowingly elicited or failed to correct such testimony, such actions entitle movant to no relief.  Movant, furthermore, has shown no prejudice from the alleged misconduct or ineffective assistance of counsel resulting therefrom.

To the extent movant asserts claims of ineffective assistance related to false trial testimony, such claims also fail.  Movant has not shown that any false testimony presented at trial was material to his convictions.

### 5. *Suppression of Evidence (Claim 3)*

In another aspect of his third claim, movant asserts that the prosecutor engaged in misconduct by withholding favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and the Jencks Act, 18 U.S.C. § 3500, (Ex. F at Part B(VII); Ex. P ¶¶ 36-37), and that his attorney failed to file a motion seeking the "information listed in the request for disclosure" in Exhibit B or the "information listed in the motion for discovery which is attached . . . as Exhibit [R]."  (App. H at 5 (referencing Ex. B as the request for disclosure).)  Exhibit B contains requests for disclosures submitted to Schwab, Wells Fargo, and an Assistant United States Attorney seeking information such as articles of incorporation, securities licenses, names and titles of officers and boards of

directors, etc.[22]  Exhibit R contains a list of thirty documents that movant seeks from the government, including an affidavit of fraud complaint by Schwab against him, grand jury testimony of employees of Schwab and Wells Fargo, Schwab's audited financial statement and tax return for 1999, disclosure of authority that the United States Attorney can use false testimony at trial, etc.  In addition, movant contends that his attorney failed to seek discovery of phone calls to Wells Fargo and the FBI, to investigate testimony from FBI Agent Von Bose and to request a copy of "FBI 302 report as to Agent Von Bos[e] which would have proved perjury and obstruction of justice."  (App. H at 5-6, 9.)  He asserts additional prejudice from the foregoing deficiencies of counsel in that "[h]ad counsel filed the proper motion, objection, and [sought] discovery", the government would have had to provide requested documents, dismiss the action, or put the government to the full burden of proof.  (*Id.* at 12-13.)

### a. *Brady* Claims

Movant asserts prosecutorial misconduct and ineffective assistance of counsel related alleged withholding of favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

In *Brady*, the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment.  373 U.S. at 87.  "*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'"  *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir.

---

[22] Movant made twenty-one requests to Schwab in the form: "Could you provide . . .."  (Ex. B, Schwab Request at 2-3.) He made thirty-three requests to the Assistant United States Attorney, including several requests for documentation. (*Id.*, Request for Disclosure to Michael Snipes at 2-5.)  Because the Assistant United States Attorney apparently did not respond to the request for disclosure, movant attached a Notice of Default in which he states, among other things, that the government has "agreed that there were documents and issues that [it] could have disclosed to the Court and . . . counsel that might have caused the dismissal of the action."  (*Id.*, Notice of Default at 3.)

1994).  "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

"[E]vidence is 'material' under *Brady*, and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).  Suppressed evidence is not considered material within the meaning of *Brady* when similar evidence is admitted before the trier of fact.  *E.g., Jackson v. Johnson*, 194 F.3d 641, 650 (5th Cir. 1999); *Westley v. Johnson*, 83 F.3d 714, 725 (5th Cir. 1996).

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict of confidence.  A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).  In other words, there must be "a 'significant possibility' of a different result to characterize the *Brady* materiality standard." *Strickler*, 527 U.S. at 300 (Souter, J., concurring).  In any event, the touchstone inquiry remains "whether the evidentiary suppression 'undermines our confidence' that the factfinder would have reached the same result." *Id.* at 300-01.

In this instance, movant attaches Exhibits B and R as evidence that the government suppressed evidence.  Such exhibits, however, do not support a *Brady* violation.  Movant has made no showing that the government had access to all of the documents requested in Exhibits B and R.  To the extent the government had access to such documents, movant has made no showing that the

government withheld any of them.  He has also made no showing that any allegedly withheld document was exculpatory or otherwise material to his trial.  Conclusory or "purely speculative" claims of *Brady* violations are insufficient to obtain collateral relief.  *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000).  From the information provided by movant, the Court finds no *Brady* violation. Consequently, it finds no ineffective assistance related to such an alleged violation.

### b.  Jencks Act Claims

Movant asserts prosecutorial misconduct and ineffective assistance of counsel related alleged withholding of favorable evidence in violation of the Jencks Act, 18 U.S.C. § 3500.

The Jencks Act permits defendants to move for disclosure of statements of any witness who has testified at trial.  To obtain production of a statement under § 3500, the defendant must show the existence of a producible document.  *United States v. Edwards*, 702 F.2d 529, 531 (5th Cir. 1983). Interview notes, such as are often found in 302 reports, "are not 'statements' covered by the Jencks Act disclosure requirements" unless such notes are "substantially verbatim reports."  *Id.*

In this instance, movant has shown no applicable document that has been withheld by the government.  He has not shown that any withheld document was material to his defense.  The Court finds no violation of the Jencks Act.  Consequently, it finds no ineffective assistance related to such an alleged violation.

### c.  Other Discovery

Although movant alleges that his attorney failed to investigate or obtain discovery, movant has shown no prejudice from such alleged failures.  He has not shown that any information that his attorney allegedly failed to obtain creates a reasonable probability that the outcome of his trial or sentence would have been different.  He has not provided a copy of the 302 report so as to show that

42

it could in fact prove perjury and obstruction of justice by Agent Von Bose.  An unsupported claim

of perjury or obstruction of justice does not suffice to show prejudice.  Because movant has not

shown how any particular document or piece of information prejudiced his defense, he is entitled

to no relief on his claims that his attorney failed to seek such information.  His request for disclosure

to the Assistant United States Attorney exemplifies the speculative nature of these claims – movant

states therein:  "I believe that mistakes could have been made that may affect my incarceration."

(*See* Mem. of Record dated Aug. 7, 2002, at 2, contained within Ex. B.)  Such speculation, however,

does not satisfy the prejudice prong of *Strickland*.[23]

### 6. *Improper Argument (Claim 3)*

As another part of his third claim, movant appears to assert ineffective assistance of counsel[24]

because the prosecutor made improper arguments in opening and closing statements that prejudiced

him.[25]  (Ex. F at Part B(IX).)  In particular, he complains that the following statement in opening

---

[23]  Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts gives the Court discretion to grant leave to invoke the processes of discovery, upon a showing of good cause.  Although movant has filed a motion for discovery, the Court finds no good cause for the requested discovery.  The request appears overly broad.  Furthermore, conclusory allegations do not entitle a petitioner to discovery and Rule 6 of the Rules Governing Section 2254 Cases "does not authorize fishing expeditions."  *See Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir. 1994).  The same is true for discovery in a § 2255 action.  In addition, movant attaches no certificate of conference as required by LR 7.1(b) and (h) and LCrR 47.1(b) and (h).  For all of these reasons, the District Court should deny the motion for discovery in this action.

[24]  Other than broadly assigning all errors to counsel, movant also does not connect his claims of improper argument to a specific allegation of ineffective assistance of counsel.  Nevertheless, the Court liberally construes movant's original claim along with the broad assignment of error to counsel as a claim that his attorney rendered deficient performance either by failing to object to the improper argument or failing to raise the issue on appeal.

[25]  Movant also asserts the government presented other prejudicial statements that deprived him of a fair trial.  (*See* Ex. N ¶ 16.)  Because movant makes no attempt to tie these statements to his claims of prosecutorial misconduct, and by extension to his claims of ineffective assistance of counsel, the Court finds the assertion conclusory.  Conclusory allegations are insufficient to obtain relief under § 2255.  Furthermore, a review of the alleged prejudicial statements reveals no prejudice from the statements.  Such review also reveals that some of the statements are not properly attributed to the prosecutor.  (See Tr. I at 138-44; Tr. II at 75, 153.)  Most of the statements were made in bench conferences or were otherwise outside the hearing of the jury.  (*See* Tr. II at 44, 66-77, 97, 122; Tr. III at 104, 157, 160-67.)  At least two statements resulted in objections by his attorney that the Court overruled.  (*See* Tr. III at 107, 207.)

argument was improper: "After the conclusion of this trial, the United States is going to ask you to tell both these defendants something they already know. They're guilty." (*See* Ex. P ¶ 35.) He further contends that the following statement in closing argument was improper: "Mr. Odiodio is guilty of this offense." (*Id.*)

Counsel objected to the alleged improper statement in opening argument. (*See* Tr. I at 108-09.) The Court sustained the objection and instructed the jury as follows:

> Members of the Jury, I instruct you that the statement of counsel is not an assertion concerning counsel's own personal belief, because it is improper for the prosecutor to assert to you any personal belief about a defendant's guilt, therefore I instruct you to disregard it.
> I further instruct you that nothing said by the government in opening statement varies in any way the presumption of innocence.

(*Id.* at 109.) Counsel raised no objection to the alleged improper statement made in closing argument. (*See* Tr. III at 212-13.)

"The role of the attorney in closing argument is to assist the jury in analyzing, evaluating and applying the evidence." *United States v. Garza*, 608 F.2d 659, 662 (5th Cir. 1979) (internal quotation marks omitted). Within that role, attorneys may state their contentions "as to the conclusions that the jury should draw from the evidence." *Id.* When "argument ranges beyond these boundaries it is improper." *Id.* at 663. Attorneys may only express "personal opinion on the merits of the case or the credibility of witnesses" to the extent such opinion is based "on the evidence in the case." *Id.* Unless the prosecutor ties argument to the evidence, argument concerning the guilt of the defendant generally crosses the boundary of proper argument. *Id.* at 664-65. Nevertheless, prosecutors may

---

The alleged prejudicial statements set forth in paragraph 16 of Exhibit N entitle movant to no relief because movant has shown no prejudice from such statements. Consequently, any claim of ineffective assistance of counsel necessarily fails.

properly argue that the evidence presented "was sufficient to overcome defendant's presumption of innocence, but that in order to convict defendant, the government would have to prove all the necessary elements beyond a reasonable doubt." *Bridge v. Lynaugh*, 838 F.2d 770, 775 (5th Cir. 1988).

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Statements of a prosecutor may violate due process in two ways: "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). The Court should "first determine the type or types of misconduct alleged, because '[t]he case law supplies a different test for each kind of due process violation.'" *Id.* at 1316-17 (quoting *Rogers*, 848 F.2d at 608). In this case, movant appears to allege both a general violation of due process and a specific violation of the presumption of innocence.

When a movant asserts a generic due process violation, the Court asks whether the prosecutorial comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Improper jury argument "does not present a claim of constitutional magnitude unless it is so prejudicial that the . . . trial was rendered fundamentally unfair." *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986). In addition, "[t]o establish that a prosecutor's remarks are so inflammatory as to prejudice the substantial rights of a defendant, the [movant] must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Id.* "A trial is funda-

mentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy*, 959 F.2d at 1317 (internal quotation marks omitted).[26]

When alleged prosecutorial misconduct implicates a constitutional right, the courts ask whether the statement of the prosecutor "was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment" on the constitutional right. *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988) (citations and internal quotation marks omitted). If the prosecutorial misconduct is constitutional error under this test, the courts then must determine whether the error is harmless. *Id.*

In the instant case, the prosecutor's statements do not appear manifestly intended to be taken by the jury as a comment on the presumption of innocence.[27] Nor are they of such character that the jury would naturally and necessarily take them to be a comment on the presumption. The record reflects that during opening argument the prosecutor was essentially indicating what he believed the evidence presented at trial would show. Upon objection, the Court informed the jury that the statement was not an assertion of the prosecutor's personal belief and instructed the jury to disregard the statement. Although the statement made in closing argument is more troubling in that it could be viewed as a personal belief of the prosecutor that movant is guilty, one could also view the statement as an indication of what the prosecutor believed the presented evidence showed.

---

[26] This is the only test for generic violations of due process. If the alleged misconduct does not rise to the level of constitutional error, the Court need not apply a harmless error test. *Darden*, 477 U.S. at 183 n.15. The Fifth Circuit Court of Appeals has observed, furthermore, that application of a harmless error test would be "superfluous" after a determination that the trial was rendered fundamentally unfair. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 280 (5th Cir. 1985).

[27] "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). An infringement on the presumption of innocence is subject to harmless-error analysis. *See id.* at 506-07.

Under the facts of this case, the statements of the prosecutor regarding movant's guilt do not appear of such character to be found constitutionally improper. Further, even assuming prosecutorial misconduct which amounts to a constitutional error, such error would be harmless. Nothing indicates that the statements of the prosecutor had a substantial or injurious effect or influence on the jury's verdict. Movant has not shown how the alleged prosecutorial misconduct actually prejudiced him. The lack of prejudice mandates the failure of any claim of ineffective assistance of counsel related to the alleged prosecutorial misconduct.

With respect to the alleged generic due process violation, movant has not shown that the statements of the prosecutor so infected his trial with unfairness so as to make his trial fundamentally unfair. Movant has shown no persistent or pronounced misconduct. The evidence, furthermore, is not so insubstantial that, in probability, no conviction would have occurred in the absence of the improper statements of the prosecutor. Movant has shown no reasonable probability that the verdict might have been different in the absence of the improper comments by the prosecutor. Such lack of prejudice also means that any claim of ineffective assistance of trial counsel necessarily fails. In addition, any claim of ineffective assistance of appellate counsel fails because the alleged prosecutorial misconduct was of insufficient merit to require appellate counsel to raise it on appeal.

## E.  Trial and Appeal (Claim 12)

In Claim 12, movant asserts numerous claims of ineffective assistance of counsel at trial. (*See* App. H at 5-12.) He also raises these specific allegations with regard to his appeal. (*Id.* at 10-12.) Because the basis for the trial and appellate claims are identical, the Court addresses them simultaneously.

### 1. *Presentation of Evidence*

Movant contends that his attorney failed to present at trial all evidence that movant provided to his attorney. (App. H at 6.) That evidence included evidence: (1) to rebut and refute the government's claim that "[t]he most amount of money he ever had was $2.600 [sic] and yet he would come in before this jury and attempt to try to convince you that he was able over here on loop 820 in Fort Worth, Texas that he was able to be the go between man between an investment company out in Portugal and Russia";[28] (2) to rebut the claim that "World Capital Trust never had income of $126,000 claimed to open World Capital Trust account";[29] (3) to rebut a false statements regarding his employment, income, and ownership of business since 1987; (4) of a mobile phone record that would have confirmed a call to the FBI; and (5) of all of his "good faith attempts" to the jury. (*Id.* at 6-8.) He asserts that "[h]ad counsel present[ed] all evidence, he would have established a reasonable doubt" about his guilt. (*Id.* at 13.)

Movant has not shown that the omitted evidence creates a reasonable probability that the outcome of his trial would have differed. In the absence of a showing of prejudice, the alleged deficiencies of counsel related to presentation of evidence provide no basis for § 2255 relief.

### 2. *Failure to Call Co-Defendant*

Movant claims that his attorney failed and refused to call his co-defendant to testify. (App. H at 7.) As previously mentioned in the section addressing counsel's failure to file a motion to sever,

---

[28] Although movant does not indicate the location of the quoted language within the trial record, (*see* App. H. at 6), the language comes from the government's closing argument, (*see* Tr. III at 177).

[29] Movant makes the same claim in the context of prosecutorial misconduct. (*See* App. H at 8.) The Court did not separately consider the claim in that context. An alleged failure of counsel to present evidence to rebut alleged false testimony from a government witness is appropriately considered in the instant section.

movant provides nothing to indicate what testimony his co-defendant would have provided.  He merely claims that, had counsel called his co-defendant to testify, he could have been able to rebut the element of intent and knowledge.  (*Id.* at 13.)

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative.  Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution."  *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citations omitted).  Unless the defendant provides the court "with affidavits (or similar matter)" from the alleged favorable witnesses "suggesting what they would have testified to," claims of ineffective assistance of counsel fail for lack of prejudice.  *Id.* at 636.

In this instance, movant has provided nothing from which the Court can ascertain the substance of the testimony that movant's co-defendant would have provided.  The movant's "conclusory speculation about the effect" of the alleged favorable testimony from his co-defendant "falls far short" of demonstrating prejudice.  *Id.*  Consequently, this claim entitles movant to no relief under § 2255.

### 3.  *Direct Examination of Movant*

Movant claims that his attorney induced the perjury enhancement to his sentence through his questioning of him.  (App. H. at 8-9.)  He asserts that, had counsel not asked him "the wrong question", the Court would not have enhanced his sentence for perjury.  (*Id.* at 13.)

An attorney does not render deficient performance merely by asking questions of his client during trial testimony.  Furthermore, perjury is not caused by the question, but rather the false answer.  Movant provides no basis for finding that his attorney knew that his questions would elicit

false testimony from his client.  The Court finds no deficiency of counsel based on the questions

which resulted in false testimony from movant.  Moreover, the prejudice to movant from his perjury

resulted from his false answers, not the actions of his attorney.  This claim of ineffective assistance

fails.

### 4.  *Failure to Seek a Continuance After Witness Failed to Appear at Trial*

Movant also complains about his attorney's failure to seek a continuance when Bill Satine,[30]

a Wells Fargo employee, failed to appear at trial.  (App. H at 6-7.)  He contends that Satine willfully

disobeyed a court-ordered subpoena to appear at trial to provide testimony.  (*See* Ex. J at 1.)  He

asserts that Satine would have provided testimony related to "a false claim of Bank Fraud" by Wells

Fargo.  (*Id.*)  He further asserts that such testimony would have proved that he made good faith

attempts "to combat the alleged fraud."  (*Id.* at 1-2.)  He also asserts that, had his attorney "move[d]

to compel the presence of [Satine] . . . [there] was a reasonable probability the court would have

granted the motion" or preserved the error for appeal.  (Traverse at 4.)

Because the Court ultimately dismissed the bank fraud charge against him, movant can show

no prejudice from the alleged deficiencies of counsel.  He has provided nothing to show that Satine's

testimony would have created a reasonable probability of a different outcome on the charges of wire

fraud and money laundering.  These claims thus fail to entitle him to relief under § 2255.

## F.  Trial Court Errors

In Claims 6, 7, 9, 10, and 11, movant asserts that errors of the Court contributed to his

convictions, and he attributes these alleged errors to ineffective assistance of counsel.  (*See* App. F

---

[30]  Although movant identifies the witness as "Bill Satin", the Court utilizes the spelling found in the official court
transcript.  (*See* Tr. II at 84; Tr. III at 86-87, 100.)

at 1-3; App. H at 7-9, 12-13.)  More specifically, movant contends that the Court erred with respect to the charge given to the jury and in allowing prayer during the trial proceedings.  (*See* Ex. K at 1-3; Ex. N at 5-6.)  He also contends that the Court was biased and erred during sentencing.  (*See* Ex. N at 5 and Ex. Q at 1.)

### 1.  *Prayer During Trial Proceedings (Claim 10)*

In Claim 10, movant asserts that the Court violated his right to freedom of religion by allowing prayer during the trial proceedings.  (*See* Ex. N at 5-6.)  He contends that the prayer violated his "African Religion and separation of church and state."  (*Id.*)  Although movant does not identify when such prayer occurred, the Court notes that, on the first day of trial, Court was opened as follows:  "The United States District Court for the Northern District of Texas is now in session, the Honorable Judge Sidney A. Fitzwater presiding.  Let us pray.  God save the United States and this Honorable Court."  (Tr. I at 2.)

To the extent movant contends that his attorney rendered deficient performance by not objecting to the opening of court and the statement of "Let us pray", the claim fails because attorneys have no duty to assert such an objection.  Movant, moreover, has not shown any prejudice from any deficiency of counsel related to the opening prayer.

### 2.  *Jury Instructions (Claim 7)*

Claim 7 concerns movant's assertion that the Court erred when it denied his request for instructions related to his theory of the case and failed to give an instruction on his "good faith defense", [31] and that its failure to instruct the jury on a material element deprived him of due process

---

[31] While it is not entirely clear from movant's various arguments and contentions, the Court will assume for purposes of these findings that the omitted "good-faith" instruction differs in substance from the rejected instructions concerning his theory of the case.

and equal protection. (*See* Ex. K at 1-2.) Movant further asserts that his attorney failed to protest the improper jury charge and to request a jury instruction related to a defense of "good faith." (App. H. at 7.) He claims that, had counsel sought a proper jury instruction and protested "the improper rejection of requested instruction", the jury would have better understood the case and determined whether the government had proven its case beyond a reasonable doubt. (*Id.* at 13.) He further argues that the "[f]ailure to present the issue on appeal is assigned to ineffective assistance of counsel." (*Id.* at 2.) He asserts that "[t]he prejudice is conviction of one who is actually innocent and the jury inability to consider said factor in rendering its verdict." (*Id.*)

The Court instructed the jury on all necessary elements of wire fraud and money laundering. (*See* Court's Charge 9-10, 12-14.) It specifically defined "knowingly", "intentionally", and "willfully". (*Id.* at 8.) Although it is within the Court's discretion to give an instruction on a good-faith defense, such instruction is unnecessary when the good-faith concept is "adequately explained through the district court's definitions of the terms 'knowingly' and 'willfully.'" *United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998). The Court may "refuse to submit an instruction regarding a good faith defense if the defense 'is substantially covered by the charge given and the defendant has had the opportunity to argue good faith to the jury.'" *United States v. Upton*, 91 F.3d 677, 683 (5th Cir. 1996) (quoting *United States v. Giraldi*, 86 F.3d 1368, 1376 (5th Cir. 1996)). In fact, the Court may refuse a requested jury instruction related to a defendant's theory of the case when such instruction "amounts to little more than suggesting the nonexistence of one of the essential elements of the offense." *United States v. Stone*, 960 F.2d 426, 432 (5th Cir. 1992).

In this instance, defense counsel requested instructions which specifically stated that movant introduced evidence that he had no intent to defraud and "did not knowingly engage in a monetary

52

transaction involving criminally deprived property." (*See* Def.'s Requested Jury Instructions Nos. 19-21.)  In its pretrial conference, the Court found the requested instructions adequately covered by the proposed jury charge, and thus declined to separately set out the instructions requested by movant. (*See* Pretrial Tr. at 12-13.)  Counsel renewed his request for such instructions on the record when the Court was finalizing the jury charge. (*See* Tr. III at 157.)  The Court expressly adopted its earlier reasoning and stated:

> I conclude that the instruction is not warranted because it does not present a defensive theory.  It really is in the nature of a denial of – or a suggestion of the nonexistence of one or more of the essential elements of the offense and therefore is adequately covered by the balance of the charge.

(*Id.*)  In closing argument, defense counsel stressed movant's alleged lack of intent, lack of knowledge, and good-faith efforts. (*See* Tr.-III at 186-98.)

The Court did not err in rejecting movant's proposed instructions.  In addition, had counsel specifically requested a good-faith instruction it appears that the Court would have rejected such instruction for the same reasons that it rejected the proffered instructions related to movant's theory of the case.  Because the Court specifically rejected movant's theory-of-the-case instructions, the Court finds no deficiency of counsel in failing to request a separate instruction dealing specifically with good-faith.  Furthermore, because the good faith defense was substantially covered by the charge given and because movant had the opportunity to argue good faith to the jury, the Court finds no prejudice from the lack of a good-faith instruction.  The failure to request such instruction did not prejudice movant.  Movant has not shown a reasonable probability that, but for the failure to request a good-faith instruction, the outcome of movant's trial would have differed.

With respect to the failure of appellate counsel, the Court finds no deficiency related to the failure to present the jury charge issue on appeal.  The omitted challenge had insufficient merit to warrant raising it on appeal.  Furthermore, movant has shown no reasonable probability that, had counsel raised the issue on appeal, the outcome of the appeal would have differed.  He has shown no reasonable probability that the appellate court would have found any error related to the jury charge that would have affected movant's convictions.

### 3. Sentencing Errors (Claims 6 and 11)

Claims 6 and 11 concern movant's assertion that the Court erred in various respects during sentencing, (see generally Ex. Q), and that his attorney was ineffective at sentencing.

#### a. Application of Section 2S1.2(b)(1(B)

Movant alleges that the Court erred in applying U.S. SENTENCING GUIDELINES MANUAL § 2S1.2(b)(1)(B).  (See Ex. Q at 1-3.)  He argues that the Court could not apply that section because the court of appeals reversed his bank fraud conviction and bank fraud was an essential element to his money laundering offense as set forth in his indictment.  (See id. at 2-3.)

In this instance, although the Fifth Circuit reversed movant's bank fraud conviction, it also specifically indicated that bank fraud is not an element of money laundering, and that the proof at trial was sufficient to convict movant under the money laundering charge set forth in the indictment. See Odiodio I, supra, at 404; Odiodio II, supra, at *1.  This Court will not revisit the issue.  The reversal of movant's bank fraud conviction created no error in the application of U.S. SENTENCING GUIDELINES MANUAL § 2S1.2(b)(1)(B) to sentence movant for money laundering.  That the appellate court reversed the conviction for bank fraud simply did not impact the applicability of § 2S1.2. Consequently, the Court finds no ineffective assistance of counsel related to this claim.

54

### b. Downward Departure

Movant also claims that the Court improperly failed to depart downward from the sentencing guidelines pursuant to 18 U.S.C. § 3553(b) and U.S. SENTENCING GUIDELINES MANUAL § 5K2.0, when mitigating evidence warranted such departure. (*See* Ex. Q at 1, 11-13.) He contends that the Court abused its discretion when it based its sentencing calculation on 18 U.S.C. § 1957 and U.S. SENTENCING GUIDELINES MANUAL § 2S1.2 instead of section 2F1.1. (*Id.* at 11, 21-24.) He suggests that the circumstances of his case are unusual enough for it to fall outside the heartland of a case governed by the money laundering guideline. (*Id.* at 11, 21.) He submits that the Sentencing Commission has not adequately considered the situation where "specified unlawful activity of bank fraud was reversed at the time of re-sentencing." (*Id.* at 12.) He argues that the Court should have followed the reasoning in *United States v. Hemmingson*, 157 F.3d 347 (5th Cir. 1998) to apply the guideline for fraud. (*Id.* at 21.) In the context of ineffective assistance of counsel, movant claims that his attorney "failed to move for [a] heartland departure"; failed to convince the Court to use the fraud guideline; and failed to present mitigating circumstances. (App. H. at 9.)

When the Court sentenced movant, it had discretion pursuant to § 3553(b)(1) to depart from the applicable guideline range, if it found "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." However, earlier this year, the Supreme Court struck down § 3553(b)(1) and rendered the guidelines entirely advisory, rather than mandatory. *See United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738, 764-65 (2005). Nevertheless, "[e]ven in the discretionary sentencing system established by [*Booker*], a sentencing court must still carefully consider the detailed statutory scheme created by the [Sentencing

Reform Act] and the Guidelines, which are designed to guide the judge toward a fair sentence while avoiding serious sentence disparity." *United States v. Mares*, 402 F.3d 511, 518-19 (5th Cir. 2005).

In this case, the Court properly applied U.S. SENTENCING GUIDELINES MANUAL § 3D1.1 to determine the offense level for movant's related convictions of wire fraud and money laundering. Because it specifically grouped the offenses together pursuant to section 3D1.2(b), it used the highest offense level for the two counts. *See* U.S. SENTENCING GUIDELINES MANUAL § 3D1.3(a) (1998). Section 2S1.2 produced the highest offense level. The Court properly applied that section to calculate movant's sentence. Movant does not contest the application of sections 3D1.1, 3D1.2, and 3D1.3 to determine the offense level for his multiple convictions. Nor does he argue that the Court committed legal error or misapplication of the guidelines. Rather, he is merely dissatisfied that the Court did not exercise its discretion to downwardly depart from the guidelines. For such dissatisfaction to be properly considered in the context of this § 2255 action, movant must show ineffective assistance of counsel.

To show ineffective assistance of trial counsel[32] for not seeking a downward departure, movant must show a reasonable probability that the Court would have granted such a departure had it been sought. Movant has not carried that burden. He has provided nothing to convince the Court that a departure was warranted based upon the facts of his case. As already noted, the reversal of movant's conviction for bank fraud did not impact the applicability of § 2S1.2. Movant has provided nothing to show that his case falls outside the heartland of cases governed by § 2S1.2.

---

[32] Because the courts of appeal have no jurisdiction over a refusal to grant a downward departure, *see Hemmingson*, 157 F.3d at 359 & n.9, there can be no ineffective assistance of appellate counsel for failure to raise the issue to the Fifth Circuit.

*Hemmingson* does not dictate a contrary finding. The Court finds no ineffective assistance of counsel related to seeking a downward departure.

### c. Obstruction of Justice Enhancement

Movant further claims that the Court violated his due process rights when it enhanced his sentence in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Ex. Q at 9-10, 14-21.) He argues that the Court cannot enhance his sentence merely because he testified at trial. (*Id.* at 9.) He also contends that the Court violated his due process rights when it enhanced his sentence without proper notice. (Ex. F at Part C(X).) He claims that ineffective assistance of counsel resulted in the two-level enhancement. (App. H at 13.)

Pursuant to U.S. SENTENCING GUIDELINES MANUAL § 3C1.1, federal courts may increase a defendant's offense levels by two if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." Committing perjury is one example of conduct to which the obstruction of justice enhancement applies. *See* U.S. SENTENCING GUIDELINES MAN-UAL § 3C1.1, cmt. n.3(b) (1998). This enhancement "is proper any time the defendant is aware of the action or investigation against him and he conceals or attempts to conceal information material to the investigation, prosecution, or sentencing of the instant offense." *United States v. Upton*, 91 F.3d 677, 688 (5th Cir. 1996). Information is material, "if believed, [it] would tend to influence or affect the issue under determination." U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 cmt. n.5 (1998).

Although the Court "may not penalize a defendant for denying his guilt as an exercise of his constitutional rights, a sentence may be enhanced if the defendant commits perjury." *United States*

57

*v. Como*, 53 F.3d 87, 89 (5th Cir. 1995), *accord United States v. McCauley*, 253 F.3d 815, 821 (5th Cir. 2001). In fact, at the time of movant's trial, the sentencing guidelines provided for a mandatory two-level increase in the offense level upon a finding that the defendant committed perjury at his own trial. *See United States v. Dunnigan*, 507 U.S. 87, 98 (1993); *United States v. Humphrey*, 7 F.3d 1186, 1191 (5th Cir. 1993). Furthermore, the courts could make such increase *sua sponte*. *See United States v. Sisti*, 91 F.3d 305, 311 (2d Cir. 1996) (noting such *sua sponte* increase without disapproval); *United States v. Willis*, 997 F.2d 407, 416-17 (8th Cir. 1993) (approving such *sua sponte* increase).

In this instance, before enhancing movant's sentence for obstruction of justice, the Court tentatively found that he had committed perjury in fourteen specific respects at trial. (*See* Mem. Op. & Order at 4.) Two months later at sentencing, the Court converted the tentative findings to its final findings minus three of the fourteen specified instances of perjury which the Court had sustained objections. (Sentencing Tr. at 5.) On appeal, the Fifth Circuit upheld the enhancement for perjury. *See Odiodio I*, *supra*, at 405. The Court clearly did not enhance movant's sentence merely because he testified at trial. The tentative findings, furthermore, gave movant ample notice that the Court was considering such an enhancement. The Court did not enhance movant's sentence without notice. Consequently, there is no merit to the allegations that the Court erred in failing to give proper notice of such enhancement and in enhancing movant's sentence merely because he testified at trial. Counsel thus rendered no ineffective assistance related to such alleged trial errors.

Furthermore, movant's reliance upon *Apprendi* provides no basis for relief. Not only is *Apprendi* inapplicable on collateral review, *see Wesson v. United States Penitentiary*, 305 F.3d 343, 347-48 (5th Cir. 2002); *United States v. Brown*, 305 F.3d 304, 310 (5th Cir. 2002), but the claim based

upon *Apprendi* lacks merit.  "It is clear in this circuit that where an enhancement does not increase the defendant's sentence above the statutory maximum, there is no *Apprendi* violation."  *United States v. Wilson*, 249 F.3d 366, 380 (5th Cir. 2001).  The Court sentenced movant to seventy-one months imprisonment on his convictions for wire fraud and money laundering.  Such sentence is below the statutory maximum sentence for those offenses.  *See* 18 U.S.C. §§ 1343 (setting maximum sentence of thirty years imprisonment when the fraud "affects a financial institution"), 1957(b) (setting maximum sentence at ten years imprisonment).  Because movant's sentence falls below the statutory thresholds, "*Apprendi* is not implicated."  *Wilson*, 249 F.3d at 380.  "Factual determinations made by a district court, based on a preponderance of the evidence, . . . that simply dictate a sentence within the statutorily allowed range are not called into question by *Apprendi*."  *See United States v. Miranda*, 248 F.3d 434, 444 (5th Cir. 2001).  There is simply no violation of *Apprendi* when "a fact used in sentencing that was not alleged in an indictment and proved to a jury does not increase the sentence beyond the statutory maximum."  *United States v. McIntosh*, 280 F.3d 479, 484 (5th Cir. 2002).

Because movant has not shown that his sentence enhanced for perjury violates his constitutional rights or *Apprendi*, he has no basis for a claim of ineffective assistance of counsel related to that enhancement.

### d. Restitution

Movant alleges that the Court erred as to the amount of restitution that he must pay, and that counsel was therefore ineffective.  (App. H at 8-9, 13)  Because claims regarding restitution do not relate to unlawful custody, such claims are not "cognizable under § 2255."  *See United States v.*

*Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994).  Consequently, the Court will not further consider such claims.

### 4. *Trial Court Bias (Claim 9)*

In Claim 9, movant asserts that bias by the Court prejudiced his right to a fair trial, (*see* Ex. N at 5), and that his trial attorney failed to object to the bias of the trial court, (App. H at 12).  He contends that bias controlled the decision to not perform a "heartland" analysis and that the Court showed its bias when it assumed "the role of prosecutor, jury, and judge" to enhance his sentence without notice based upon perjured testimony given at trial.  (Ex. Q at 25; Ex. F at Parts C(III) and (X).)

Judges have the "duty to conduct the trial carefully, patiently, and impartially." *United States v. Carpenter*, 776 F.2d 1291, 1294 (5th Cir. 1985) (quoting *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979)).  They "must be above even the appearance of being partial to the prosecution." *Id.* (same).  To determine whether a judge has "overstepped the limits imposed on the judge's conduct," the courts "view the proceedings as a whole."  *Id.*  "In reviewing a claim that the trial court appeared partial, [the courts] must determine whether the judge's behavior was so prejudicial that it denied the [defendant] a fair, as opposed to a perfect, trial." *United States. v. Saenz*, 134 F.3d 697, 702 (5th Cir. 1998) (citation and internal quotation marks omitted).

In this instance, movant alleges bias from the Court's *sua sponte* enhancement for obstruction of justice and its failure to conduct a "heartland" analysis.  As previously discussed, the Court made no error with respect to the obstruction enhancement and the circumstances of this case did not warrant a heartland departure.  The Court properly applied the sentencing guidelines to determine an appropriate sentence.  Rather than exhibiting bias against movant, the Court's actions exhibit

faithful compliance with the sentencing guidelines.  Neither the enhancement nor the failure to conduct a heartland analysis demonstrates bias by the Court.[33]  Consequently, counsel did not render deficient performance when he failed to lodge an objection to the Court's alleged bias.  Attorneys need not file futile motions or assert meritless objections to render effective assistance of counsel. Movant has presented nothing to overcome the strong presumption that the conduct of his attorney fell within the range of reasonable assistance.

Because there is no legitimate basis for movant's allegation of bias and because he has shown no deficiency of counsel related to the alleged bias of the trial court, Claim 9 and any related ineffective-assistance claim entitles movant to no relief under 28 U.S.C. § 2255.

## G.  Other Appeal Errors

In addition to the claims of ineffective assistance of appellate counsel already addressed by the Court, movant further claims that his attorney rendered ineffective assistance on appeal by

a.      failing to seek his approval before filing appellate brief;

b.      failing to properly brief the relationship between the bank fraud element of the money laundering offense;

c.      failing to present "the prejudicial effect of the motion for mistrial filed at trial";

d.      failing to file a traverse brief in response to the government's brief;

e.      failing to present objection made related to jury charge;

---

[33] Movant broadly complains that bias of the Court deprived him of a fair trial.  (See Ex. N at 5.)  To the extent such allegation of bias flows from actions of the Court, other than the enhancement for perjury or failure to conduct a heartland analysis, the claim also fails.  Conclusory allegations of trial-court bias are insufficient to obtain collateral relief. See Ross v. Estelle, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (per curiam); Ford v. Dretke, No. 3:03-CV-1675-R, 2005 WL 645242, at *3 (N.D. Tex. Mar. 18, 2005) (findings, conclusions, and recommendation addressing issue in context of 28 U.S.C. § 2254), accepted by 2005 WL 770702 (N.D. Tex. Apr. 4, 2005).  A review of the record, furthermore, reveals no bias by the trial court.  Counsel thus had no basis to object to any alleged bias.

f.      failing to file a motion to reconsider related to the appellate court's using wire fraud as a basis for the money laundering offense;

g.      failing to move for rehearing when appellate court "erroneously used §1956 to affirm a §1957 charge[] when element of charged offense specified Bank Fraud as element";

h.      failing to move for rehearing to address statement of the appellate court that "Bank stated sales never showed any evidence of annual sales near $128,271.50" when counsel had a tax return that showed sales of approximately $126,000;

i.      presenting wrong argument with respect to wire fraud which permitted the appellate court to constructively amend the indictment; and

j.      failing to object or rebut by rehearing statement of appellate court that he "had no legitimate employment or business sufficient to explain his access to this large sum of money".

(App. H at 10-12.)  According to Movant, he was prejudiced by these alleged deficiencies because if counsel had rendered effective assistance on appeal, the appellate court (1) would have reversed all convictions; (2) would have recognized that (i) that the indictment was defective; (ii) World Capital Trust had income of $126,000; (iii) the alleged wire fraud was based on a wire from Schwab not Wells Fargo; and (iv) bank fraud was an element of offense under the money laundering count of the indictment; (3) would not have had to use the law-of-the-case doctrine to bar claims on his second appeal; and (4) might have sided with him on the jury charge claim.  (App. H at 12, 14; Traverse at 4.)

    The Court finds no ineffective assistance of appellate counsel.  The enumerated remaining claims of ineffective assistance of appellate counsel essentially fall into three categories:  (1) failure to seek movant's approval; (2) failure to properly brief or raise issues; and (3) failure to file a traverse or move for reconsideration or rehearing.  With respect to the first category, movant has not shown

62

that the failure to obtain his approval before filing his appellate brief prejudiced his appeal. He has not shown that an approved brief would have contained any claim that would have created a reasonable probability of a different outcome on appeal. With respect to Category 2, movant has not shown that the issues not presented or properly briefed to the court of appeals were of sufficient merit to warrant raising such claim on appeal. With respect to Category 3, movant has not shown a basis for obtaining reconsideration or a rehearing from the court of appeals. He has also not shown how the failure of his attorney to file a traverse prejudiced his appeal. For all of these reasons, these claims of ineffective assistance of appellate counsel entitle movant to no relief under § 2255.

## H. Summary

Because movant failed to show a conflict of interest or a constructive denial of counsel to invoke a less stringent standard for finding ineffective assistance of counsel, *Strickland* provides the basis for determining whether movant received ineffective assistance of counsel during his federal criminal proceedings. For his claims that were not raised on direct appeal, movant has shown no ineffective assistance of counsel under *Strickland* to overcome his procedural default. For his claims specifically characterized as ones of ineffective assistance, he has likewise shown no ineffective assistance under *Strickland*. For each of his claims, he either shows no deficiency of counsel, no prejudice from such deficiency, or both. Having considered movant's claims in light of the totality of the circumstances and their cumulative effect, the Court finds no deficiency of counsel that prejudiced movant in any respect. The failure to show ineffective assistance of counsel under the standards enunciated in *Strickland* "reinforces the conclusion that no basis for a presumption of prejudice – the prerequisite of a denial of counsel under *Cronic* – exists here." *See Mayo v. Cockrell,*

287 F.3d 336, 341 n.5 (5th Cir. 2002). Movant is entitled to no relief under 28 U.S.C. § 2255 for

any ineffective assistance claim raised in the instant action.[34]

## V.  SUFFICIENCY OF THE EVIDENCE

In Claim 1, movant argues that insufficient evidence supports his convictions and the en-

hancement for obstruction of justice. (*See* Ex. F at Part (C)(I) and (VII); Ex. N at 2-3.) As prev-

iously noted, he concedes that he raised this claim on direct appeal, and that the Fifth Circuit denied

him relief. Thus, he cannot again raise the same challenge in this collateral attack on his federal

convictions. *See United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997).

Movant attempts to characterize his claim as one arising under due process or equal pro-

tection. However, a challenge to the sufficiency of the evidence remains such a challenge regardless

of the title placed upon it by one seeking to vacate his federal convictions. The nature of a claim

does not change merely by altering the title placed upon it. Moreover, a sufficiency-of-the-evidence

claim is based upon a violation of due process. *See Griffin v. United States*, 502 U.S. 46, 56-57 (1991)

(holding that a conviction survives allegations of a due process violation under the Fifth Amend-

ment when there is sufficient evidence to support the conviction); *Jackson v. Virginia*, 443 U.S. 307,

316 (1979) (recognizing that "an essential of the due process guaranteed by the Fourteenth

---

[34] The Court has addressed the specific claims identified by the government in its response (to which movant did not object)and the additional claims raised by movant in his reply brief as well as each specific allegation of ineffective assistance addressed by movant in an attempt to show prejudice. To the extent that movant contends he raised claims of ineffective assistance of counsel in his voluminous attachments to his motion to vacate other than those claims specifically addressed herein, the Court finds such claims conclusory and without adequate support. "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue" on federal collateral review. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Such claims necessarily fail under *Strickland* because movant has failed to affirmatively show that he was prejudiced by such deficiencies. One does not affirmatively show prejudice without specifically discussing the prejudice that purportedly resulted from alleged deficiencies of counsel. Merely listing numerous alleged deficiencies of counsel or stating various principles of law without connecting them to the facts of his case or broadly assigning error to counsel is insufficient to show ineffective assistance of counsel.

Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense"); *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992) (stating that "[a] criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense"). Whether Claim 1 is characterized as a challenge to the sufficiency of the evidence or as a claimed due process violation, the court of appeals has decided the claim against movant. Claim 1 thus entitles movant to no relief.

## VI.  GENERAL DUE PROCESS AND EQUAL PROTECTION VIOLATIONS

In Claim 16, movant asserts generally that he has been denied his right to due process and equal protection.  (*See generally* Ex. O.)  He contends that criminal defendants are deprived due process when the government suppresses material evidence and knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  (*Id.* at 1.)  He suggests that violations regarding his indictment and the grand jury proceedings have deprived him of due process.  (*Id.* (referring to Apps. O and K).)  He also contends that an equal protection violation occurs when the government treats someone differently than another who is similarly situated.  (*Id.* at 2.)  With respect to such equal protection violation, he specifically refers to his claim of selective prosecution.  (*Id.*)

Movant's general allegations of due process and equal protection violations relate to other specifically-identified claims of ineffective assistance of counsel, which movant was required to show in order to overcome the procedural bar that arose by his failure to raise such claims on direct

appeal.[35] Because the Court has already considered these claims in the ineffective assistance context and found no basis to grant relief, it likewise finds no basis to grant relief on the general allegations.

## VII.  EVIDENTIARY HEARING

Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary.  No evidentiary hearing is required, when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255.  In this instance, the matters reviewed by the Court conclusively show that movant is entitled to no relief.

## VIII.  MOTION TO VACATE THE MANDATE

Movant also filed a motion to vacate the mandate.  Purportedly pursuant to Fed. R. Civ. P. 60(b)(1), movant asks the Court to vacate the mandate entered by the court of appeals in *Odiodio I*.  (*See* Mot. Vacate Mandate at 1.)  Rule 60(b)(1) provides no basis for a District Court to vacate a mandate issued by the court of appeals.[36]  Accordingly, the District Court should overrule the motion.

## IX.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C.

---

[35] The Court notes that movant also raises general due process and equal protection claims in Exhibit N.  Because such claims also relate to other specifically-identified claims of ineffective assistance, the Court likewise considered them in that context.

[36] The Court notes that while "the courts of appeals are recognized to have an inherent power to recall their mandates," such "power can be exercised only in extraordinary circumstances."  *Calderon v. Thompson*, 523 U.S. 538, 549-50 (1998).  In fact, "[t]he sparing use of the power demonstrates it is one of last resort, to be held in reserve against grave, unforeseen contingencies."  *Id.* at 550.  Movant has shown no such circumstances or contingencies.

§ 2255 with prejudice. It further **RECOMMENDS** that the Court **DENY** the motion for discovery and motion to vacate mandate that movant filed with his § 2255 motion to vacate.

**SIGNED this 23rd day of August, 2005.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

67